**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

TARA LYNN MELGAR,

      Plaintiff,

v.                                            Case No. 6:18-cv-2096-J-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

      Defendant.
_____/

## **MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability and disability insurance benefits ("DIB"). Plaintiff filed her application for DIB on September 25, 2015, alleging a disability onset date of July 24, 2015, which was denied initially and on reconsideration. (Tr. 15.) A hearing was held before the assigned Administrative Law Judge ("ALJ") on January 31, 2018, at which Plaintiff was represented by counsel. (Tr. 33-66.) The ALJ found Plaintiff not disabled from July 24, 2015 through March 23, 2018, the date of the decision.[2] (Tr. 15-24.) Plaintiff is appealing the Commissioner's final decision that she was not disabled during the

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 15.)

[2] Plaintiff had to establish disability on or before December 31, 2019, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 15.)

relevant time period.  Plaintiff has exhausted her available administrative remedies and the case is properly before the Court.  (Tr. 1-3.)  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, the Commissioner's decision is **REVERSED and REMANDED**.

**I.     Standard**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff raises two issues on appeal. First, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because he failed to properly weigh the opinion of Dr. Joshua Appel, an examining physician.[3] (Doc. 18 at 8-13.) Second, Plaintiff argues that the ALJ failed to adequately assess Plaintiff's subjective complaints. (*Id.* at 13-14.) Defendant counters that substantial evidence supports the ALJ's evaluation of the medical evidence of record and that the ALJ properly evaluated Plaintiff's subjective complaints. (Doc. 21 at 4-12.) The undersigned agrees with Plaintiff on the first issue, and, therefore, does not address the second issue in detail.

### A. Standard for Evaluating Opinion Evidence and Subjective Symptoms

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

---

[3] Plaintiff notes that although Plaintiff's "hearing representative stated Dr. Appel was 'a more recent treating doctor,' . . . Dr. Appel created his opinion after his first examination, and thus will be referred to as an examining physician under the Regulations." (Doc. 18 at 9 n.1.)

3

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6). "However, the ALJ is not required to explicitly address each of those factors. Rather, the ALJ must provide 'good cause' for rejecting a treating physician's medical opinions." *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam), 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec.*

4

*Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam); *see also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision. SSR 96-6p.

### B. Relevant Evidence of Record

#### 1. MRI Results

On June 12, 2015, Plaintiff underwent an MRI of the lumbar spine, which was compared with a previous MRI from January 17, 2008 and showed:

> There has been [an] interval decrease in size of the right paracentral disc protrusion at L4-5 since the previous examination. There has been some interval decompression of the spinal canal and mass effect on the cauda equina nerve roots. At this point, there is moderate to severe central stenosis at that level and impingement of the descending right L5 nerve root by a residual disc protrusion, but overall improvement in comparison with the prior study. At L3-4, there continues to be disc bulging and facet arthropathy, resulting in moderate but stable degree of central stenosis, along with right neural foraminal disc protrusion abutting the exiting right L3 nerve root.

5

> No additional new abnormalities are demonstrated at any level. Thoracolumbar scoliosis convex to the left is again noted. Signal changes are again noted in the marrow about the L4-5 disc space.

(Tr. 291.) The impression was:

> Interval improvement of the disease at L4-5 since the previous MR[I] examination of 1/17/08, with decompression of the cauda equina nerve roots and moderate to severe central stenosis and some impingement on the descending right L5 nerve root. Stable moderate central stenosis at L3-4, along with a right neural foraminal disc protrusion and abutment of the exiting right L3 nerve root.

(*Id.*)

On July 14, 2015, Plaintiff underwent another MRI of the lumbar spine after presenting to the emergency department with a history of known disc herniation and spinal stenosis, with new stool incontinence and perineal paresthesia. (Tr. 285-86.) The MRI results showed, in relevant part:

> At L3/L4 there is disc desiccation. Minimal disc bulge slightly encroaches on the inferior aspects of the right neural foramen without definite exiting nerve compromise. There is facet degenerative change and mild spinal stenosis.
>
> At L4/L5 there is severe disc space narrowing with underlying disc desiccation and degenerative endplate marrow changes (Modic type II). There is diffuse disc bulge with associated prominent osteophytic ridging and additional facet degenerative changes. Findings result in severe spinal stenosis and additional moderate bilateral foraminal narrowing.
>
> At L5/S1 there is facet degenerative change. There is no spinal stenosis or foraminal narrowing.

(Tr. 285.) The impression was: "L4-5 severe degenerative disc disease with associated osteophytic ridge disc complex contributes to severe spinal stenosis and bilateral foraminal narrowing." (Tr. 286.)

6

On October 4, 2017, Plaintiff underwent another MRI of the lumbar spine without contrast, which was compared with the lumbar MRI performed on June 12, 2015. (Tr. 451-52.) That MRI showed, in relevant part:

> FINDINGS: There is normal lumbar lordosis. Mild dextroscoliosis with tip at L4-L5. Vertebral body heights are preserved. No marrow-replacing lesion is noted. There are no signal abnormalities in the lumbar spinal cord/cauda equina. The conus terminates at the level of L1. No paravertebral soft tissue abnormality is seen.
>
> SIGNIFICANT FINDINGS BY LEVEL:
> . . .
> L3-L4: Mild loss of disc height and signal. Subtle anterolisthesis with uncovering of posterior disc efface anterior thecal sac. Moderate bilateral facet arthropathy. Otherwise unremarkable. Findings are unchanged.
>
> L4-L5: Severe loss of disc height and signal with endplate degenerative marrow change. Grade 1 retrolisthesis with uncovering of posterior disc and 3mm right paracentral disc protrusion efface anterior thecal sac. The protruded disc moderately narrows right subarticular recess impinging on a descending right L5 nerve root. Moderate bilateral facet arthropathy. Findings result in mild bilateral neural foraminal narrowing and mild canal stenosis. There is worsening loss of disc height and signal.
>
> L5-S1: Severe bilateral facet arthropathy. Otherwise unremarkable.
>
> 8 mm cystic area within the most distal aspect of the thecal sac at the level of S1-S2 is mostly consistent with a perineural cyst/Tarlov cyst.

(Tr. 451.) The impression was:

> Since prior MRI, there is worsening loss of disc height and signal at L4-L5. Otherwise[,] multilevel degenerative findings are stable.
>
> Mild dextroscoliosis with tip at L4-L5.
>
> At L4-L5, grade 1 retrolisthesis, mild canal stenosis, mild bilateral neural foraminal narrowing, and right paracentral disc protrusion

7

impinges on the descending right L5 nerve root. Findings can be associated [with] right L5 radiculopathy.

At L3-4, subtle anterolisthesis.

(Tr. 451-52.)

### 2. Joshua Appel, M.D., M.S.

On October 24, 2017, Dr. Appel examined Plaintiff for the first time and, that same day, completed an examination report, as well as an insurance-related Attending Provider Statement and Capabilities and Limitations Worksheet. (Tr. 469-70, 473-74.) In his examination report, Dr. Appel noted Plaintiff's history of illness as follows:

> The patient is a pleasant 46-year-old female who comes in today with chronic history of lower back pain. She has been followed by an orthopedic surgeon in Long Island for some time now due to known chronic lower back pain issues and is currently on disability. She states her biggest issue is the lower back pain with radiation into the bilateral buttocks, thighs, and into her legs bilaterally into the back of calves and feet. She states she has had epidural injections in the past without significant relief. She also states she has psoriatic arthritis. She states she has numbness and tingling, which is really constant in her legs and her feet. On the pain diagram, she lists right lower extremity and posterolateral aspects as well as anterolateral aspect of the lumbar spine. Her pain is 3/10 on a good day and on a bad day, it is 9/10. Her legs and feet go numb and tingly. She can walk one to three blocks, but with pain and she has difficulty with ambulation.

(Tr. 469.) Dr. Appel reported the following observations and findings:

> PHYSICAL EXAMINATION: . . . Gait is normal. L2-S1 motor and sensory are intact except she has diminished sensation in S1 distribution in the right lower extremity and diminished motor at L4-L5 in the right lower extremity at L5. Sitting straight-leg raise produces significant axial pain on the left leg at 75 degrees, negative on the contralateral side. She has negative FABER and negative

8

> Yeoman's bilaterally. Her hip range of motion is full on the left. On the right side she has some pain with internal and external rotation of the right as well. Waddell sign is 0-5. Abdomen is soft, non-tender, and nondistended. Hips have good range of motion. Capillary refill is brisk in the lower extremities. . . . No edema is noted. 2+ radial pulse.
>
> DIAGOSTIC STUDIES: She did have an MRI of the lumbar spine, which is available for my review. MRI of the lumbar spine[,] dated 10/04/17, demonstrates significant loss of disc height at L4-L5 with Modic changes at L4-L5 as well as moderate canal stenosis and severe foraminal stenosis at L4-L5 with facet arthropathy at multiple levels.
>
> IMPRESSION: The patient [sic] with discogenic type pain in the lumbar spine with facetogenic type symptomology as well. She has significant discogenic arthritic changes in the lower lumbar spine and she almost has complete loss of disc height at L4-L5 with some Modic changes foraminal as well as central canal stenosis. I think she has some neurogenic claudicatory symptomatology as well.
>
> PLAN: Based on [her] symptomatology and findings, and the failure in the past, at this point in time, my first recommendation is, most of her pain is back pain, a lot of [it] due to extension and twisting, I would probably [] try facet injections to see if the patient gets relief. If she has facet arthropathy at multiple levels, this might help. If not, the second option[,] and most likely option in the future[,] would be fusion at the L4-L5. . . .

(Tr. 470.)

In the Attending Provider Statement, Dr. Appel opined, *inter alia*, that Plaintiff could sit, stand, bend, and stoop for less than 30 minutes each. (Tr. 473.) Dr. Appel noted Plaintiff's treatment plan consisted of physical therapy, non-steroidal inflammatory medication, facet injections, and potential L4-L5 fusion. (*Id.*) He also listed as "unknown" the timeframe within which he expected to see improvement in Plaintiff's ability to function. (*Id.*) In the Capabilities and

9

Limitations Worksheet, Dr. Appel listed Plaintiff's diagnoses as spinal stenosis, degenerative disc disease, psoriatic arthritis, hypothyroid, hypertension, fibromyalgia, anxiety and depression. (*Id.*) Dr. Appel then opined that Plaintiff could never climb or crawl, but could occasionally kneel, lift, pull, push, reach above the shoulder, reach forward, carry, bend, and twist. (*Id.*) He further opined that Plaintiff could occasionally sit, stand, and walk, but could never stoop. (*Id.*) He also opined that Plaintiff could occasionally lift up to 20 pounds, but never more, and could operate a motor vehicle, but not hazardous machines or power tools. (*Id.*) Dr. Appel referred questions about Plaintiff's hand grasping and manipulation to her rheumatologist. (*Id.*) Dr. Appel also opined that Plaintiff could only work for up to 2 hours per day. (*Id.*)

### C. The ALJ's Decision

At step two of the five-step sequential evaluation process,[4] the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine, thyroid disorder, arthritis, obesity, depression and anxiety." (Tr. 17 (internal citation omitted).) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18.)

The ALJ then found that, through the date of the decision, Plaintiff had the

---

[4] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

10

Residual Functional Capacity ("RFC") to perform sedentary work, with the following limitations:

> [Plaintiff is limited to] lifting, carrying, pushing and pulling 10 pounds occasionally and less than 10 pounds frequently. The claimant can sit for 6 hours, stand and walk for 2 hours in an 8-hour workday. The claimant can frequently reach overhead to the left and frequent[ly] reach overhead to the right. For all other reaching, she can reach frequently to the left and can reach frequently to the right. She can handle items frequently with the left hand and handle items frequently with the right hand. She has fingering limitations frequently with the left hand and has fingering limitations frequently with the right hand. The claimant can climb ramps and stairs frequently, but never climb ladders, ropes, or scaffolds. She can balance frequently, stoop occasionally, kneel occasionally, crouch and crawl occasionally. The claimant can work at unprotected heights occasionally, [around] moving mechanical parts occasionally and in vibration occasionally. The claimant can understand, remember, and carry[] out instructions limited to simple, routine, and repetitive tasks and use judgment limited to simple work-related decision[s]. She can respond appropriately to supervisors, frequently respond appropriately to coworkers and frequently respond appropriately to the public.

(Tr. 19.) In making this finding, the ALJ considered, *inter alia*, Plaintiff's subjective complaints and testimony, the objective medical evidence, as well as the opinions of treating, examining, and non-examining sources. (Tr. 19-22.) The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's "statements concerning intensity, persistence and limiting effects of th[e] symptoms [were] not entirely consistent with the medical evidence and other

11

evidence in the record," as there "[was] limited evidence to support severe functional limitations."[5] (Tr. 20.)

In evaluating the medical evidence, the ALJ noted that Plaintiff had worked as a mammogram technician but had been "placed on light work duty on June 24, 2015 due to pain in the lower back and right leg associated with arthritis." (*Id.*) The ALJ also cited examination notes showing Plaintiff could walk with a normal gait, "although she had decreased range of motion of the lumbar spine" and her "lower extremity strength was also diminished at 4+/5." (*Id.*) The ALJ then cited to Plaintiff's June 12 and July 14, 2015 MRI results and noted that Plaintiff received epidural steroid injections "at L3-4 and L4-5 from July 27, 2015 to September 2015." (Tr. 20-21.) The ALJ observed that while Plaintiff alleged the epidural injections failed to provide adequate relief, medical records indicated Plaintiff "had significant pain reduction and did not require pain medication for some time subsequent to this procedure." (Tr. 21.) The ALJ also noted that examinations revealed Plaintiff's gait was normal, her range of motion had

---

[5] The ALJ summarized Plaintiff's subjective complaints, in part, as follows:
The claimant stopped working in July 2015 because of increased back pain. Her doctor place[d] her on light duty[,] but the claimant testified she could not perform light work duties as a mammogram technician. She [testified her] back pain travel[ed] into her legs causing numbness and tingling. Therefore, her walking [was] limited to 10 to 15 minutes, standing for 30 to 45 minutes and sitting for 1 to 2 hours. She spen[t] most of her time at home laying down to reduce her pain. She [could] perform some household chores such as laundry[] and light cleaning. She [could] also use her arms and hand[s] to make [F]acebook videos[] selling jewelry. Her duties include[d] opening oysters.
(Tr. 20.)

improved, and an orthopedic follow-up examination revealed "pain reduction and good motor strength[,] although her lumbar range of motion was limited (Exhibit 5F)." (*Id.*)

The ALJ noted that on October 14, 2015, Dr. Yadergar, Plaintiff's pain management specialist, found Plaintiff's "lumbar strength was 5/5 throughout [her] lower extremities[,] but her range of motion was diminished on all planes." (*Id.*) The ALJ then noted that Plaintiff "also underwent additional pain management techniques, including electrical acupuncture[,] which she reported worked well to control her pain." (*Id.*) Based on Plaintiff's October 4, 2017 MRI, showing "L4-L5, grade 1 retrolisthesis, mild central stenosis, mild bilateral neural foraminal narrowing, and right par central protrusion impinging on the descending right L5 nerve root with associated right L5 radiculopathy and L3-L4 subtle anterolisthesis," the ALJ reduced Plaintiff's RFC "to sedentary to accommodate her pain and diminished range of motion." (*Id.*) The ALJ also evaluated Plaintiff's obesity, "a condition that could exacerbate her back pain and further warrant reducing her" RFC to sedentary, finding that "[t]he combined effect of the obesity and degenerative joint disease" had limited her capabilities. (*Id.*)

The ALJ summarized Dr. Appel's October 24, 2017 opinion as limiting Plaintiff to lifting less than 20 pounds and to occasional sitting, stooping and walking due to degenerative disc disease at L4-5. (*Id.*) The ALJ gave Dr. Appel's opinion little weight "because it was not consistent with the treatment

13

record or the record as a whole." (*Id.*)  Upon review of the medical evidence, the ALJ noted:

> [Plaintiff] underwent treatment for a thyroid disorder, arthritis, depression and anxiety . . . .  An initial MRI showed lumbar degeneration process at only one level.  Subsequent MRI shows worsening loss of disc height[,] although her degeneration stabilized.  While she testified that she experienced joint pain all over, treatment record[s] reveal[ed] she consistently reported only back pain.  Her obesity could reasonably be expected to intensify her pack pain and could also cause knee pain.  Given this, the undersigned [has] reduced her [RFC] to sedentary to accommodate her pain and obesity.  As for her ability to perform sedentary work, the claimant is currently performing at a level that is consistent with sedentary work.  She testified she could use her arms and hand[s] to drive a vehicle, do light laundry[,] and assist her husband with his online jewelry sales.  She performs these activities regularly and without assistance.  . . .  However, given that increase[d] stress could exacerbate her anxiety symptoms, the undersigned has limited her mental activities to simple, routine, and repetitive tasks, with frequent contact with coworkers [] and the public.

(Tr. 22.)

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (*Id.*)  At step five, after considering Plaintiff's age, education, work experience, and RFC, as well as the testimony of the vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, such as document preparer, table worker, and cutter/pastier.  (Tr. 23.)  As noted in the ALJ's decision, all of these representative occupations are sedentary with an SVP of 2.  (*Id.*)

### D. Analysis

The Court agrees with Plaintiff that the ALJ's RFC assessment is not

supported by substantial evidence. (Doc. 18 at 9-13.) Plaintiff contends that since Dr. Appel's opinion "was the only physical opinion of record aside from a[n] SDM opinion, the ALJ's RFC [was] inherently unsupported by substantial evidence." (*Id.*) Thus, according to Plaintiff, because the ALJ did not have another medical opinion to rely upon, he either improperly relied on the opinion of SDM L. Dreher,[6] or improperly created an opinion without medical support. (*Id.*) The undersigned finds that the ALJ's reasoning for discounting Dr. Appel's opinion, that not it was not "consistent with the treatment record or the record as a whole," was vague and not supported by substantial evidence.

Here, the treatment records consistently demonstrate severe, or at least moderate, pain levels. (*See, e.g.*, Tr. 321 (noting a pain level of 5/10 or 6/10); Tr. 324 (noting, on October 14, 2015, that Plaintiff's pain was 8/10, was relieved by rest, medications and heat, and was exacerbated by *sitting* and standing) (emphasis added); Tr. 369 (noting, on December 16, 2015, that Plaintiff "had a

---

[6] Specifically, Plaintiff argues that:
In rejecting the opinion of Dr. Appel, there was no other opinion to rely upon besides the non-medical opinion of a State agency SDM. SDM L. Dreher opined that Plaintiff would be able to perform a range of light work, with the abilities to frequently climb ramps, stairs, ladders, ropes, scaffolds, balance, kneel, crouch, and crawl, and could occasionally stoop. While not the same as the ALJ's final RFC, the RFC did include similar limitations regarding climbing, balancing, stooping, crouching, crawling, and kneeling. [ ] As there is no other opinion of record, [the] Court could imply that the ALJ gleaned some of the RFC from the SDM opinion. The reliance on such opinion is harmful error.
(Doc. 18 at 11.) Plaintiff then argues that, based on "this implicit reliance on a SDM opinion, this matter could be remanded on this basis alone." (*Id.* at 12.)

trigger point injection last month [which] did [not] help"); Tr. 391 (noting, on February 10, 2016, a pain level of 6/10 and that pain was "exacerbated with stretching, sitting, standing, twisting, walking, bending forward, extending back, cold, lifting, exercise, and stairs"); Tr. 414 (noting, on August 4, 2015, that Plaintiff's pain level was 7/10 was relieved by lying in bed and worsened by physical activity); Tr. 469 (noting that Plaintiff's pain was 3/10 on a good day and 9/10 on a bad day).) Plaintiff's treatment included nonsteroidal anti-inflammatory medication, opioid analgesics, muscle relaxers, physical therapy, home exercises, acupuncture, epidural steroid injections, and nerve root blocks. (*See, e.g.*, Tr. 327, 329, 331, 336, 364, 369, 374, 385, 389-90, 393, 414, 417-426.) Although Plaintiff reported some relief from pain management techniques, such relief appears to have been only temporary and the record reflects that she failed conservative treatment. (*See, e.g.*, Tr. 416 (noting epidural injections provided only temporary relief); Tr. 469 (noting Plaintiff had epidural injections in the past without significant relief).)

According to Plaintiff, since the ALJ gave little weight to the opinion of Dr. Appel, "reject[ing] the only medical opinion of record, it appears as though he fashioned the RFC without medical guidance and relied on his lay opinion of Plaintiff's limitations." (Doc. 18 at 12.) Plaintiff also asserts that "[g]iven the extensive, severe, and debilitating findings as revealed in available imaging, the ALJ is not possessed of the required expertise [] to translate these findings into functional limitations." (*Id.*) The undersigned agrees with these observations.

The abnormal MRIs of the lumbar spine were consistent with the examination findings and Plaintiff's reported symptoms. (*See, e.g.*, Tr. 243 (noting that Plaintiff presented to the emergency department on July 14, 2015 due to worsening back pain and fecal incontinence); Tr. 291 (noting, as of June 12, 2015, "moderate to severe central stenosis and some impingement on the descending right L5 nerve root" and "[st]table moderate central stenosis at L3-4, along with right neural foraminal disc protrusion and abutment of the exiting right L3 nerve root"); Tr. 285-86 (noting, as of July 14, 2015, that Plaintiff had severe degenerative disc disease at L4-5 with associated osteophytic ridge disc complex contributing to severe spinal stenosis and bilateral foraminal narrowing); Tr. 451-52 (noting, as of October 4, 2017, worsening loss of disc height and signal at L4-L5, mild dextroscoliosis with tip at L4-L5, grade 1 retrolisthesis at L4-L5, with "mild canal stenosis, mild bilateral neural foraminal narrowing, and right paracentral disc protrusion imping[ing] on the descending right L5 nerve root," associated with right L5 radiculopathy).) The ALJ's conclusion that Dr. Appel's opinions were inconsistent with the medical evidence or the record as a whole, particularly in light of the results of the MRIs showing moderate to severe findings, is not supported by substantial evidence.

Based on the foregoing, the ALJ's vague reasons for largely discounting the only examining opinion in the record appear to be unsupported by substantial evidence. Because the Court concludes that the ALJ erred in his evaluation of the medical opinions, the Court will not separately address Plaintiff's arguments

17

regarding the ALJ's assessment of her subjective complaints, and this case will be reversed and remanded for further proceedings.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this Order, pursuant to sentence four of 42 U.S.C. § 405(g) with instructions to the ALJ to conduct the five-step sequential evaluation process in light of all the evidence, including the opinion evidence from treating, examining, and non-examining sources, and conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** in Jacksonville, Florida, on March 24, 2020.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record